UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUPERIOR PLAY SYSTEMS, INC.,
a Pennsylvania corporation,

    Plaintiff,

vs.                                                                                       Case No. 14-12106

SUPERIOR PLAY, L.L.C., a Michigan            HON. AVERN COHN
Limited Liability Company,

    Defendant.

_____/

**MEMORANDUM AND ORDER
DENYING DEFENDANT'S MOTION TO DISMISS (Doc. 6)**[1]

I.  Introduction

This is a trademark case. Plaintiff Superior Play Systems, Inc. (SPS) is suing defendant Superior Play, L.L.C. (Superior Play) asserting multiple claims under state and federal law. Both parties are in the business of selling playground equipment and services.

Before the Court is Superior Play's motion to dismiss on the grounds that the complaint is time barred, either by laches or by applicable statutes of limitations. Essentially, Superior Play says that the complaint makes clear that SPS knew of its existence and allegedly infringing activity in 2006, which is well beyond any applicable

---

[1]Although originally set for hearing, upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

statue of limitations and its failure to file this case until 2014 constitutes laches. For the reasons that follow, the motion will be denied.

## II.  Background

SPS owns the federally registered mark Superior Play Systems which it says it has used since 1993. Beginning in 1999 and to the present, SPS has done business in the state of Michigan. SPS says that Superior Play offers similar goods and services in Michigan maintaining a website, www.superiorplaymi.com and a Twitter handle @superiorplaymi. SPS says Superior Play's use infringes its mark.

On May 27, 2014, SPS sued Superior Play. The complaint asserts the following claims:

| | | |
|---|---|---|
| Count I | Trademark infringement, in violation of 15 U.S.C. § 1114(1) |
| Count II | Unfair competition, false designation of origin, and false and misleading representations, in violation of 15 U.S.C. § 1125(a) |
| Count III | Cyberpiracy, in violation of 15 U.S.C. § 1125(d) |
| Count IV | Common law trademark infringement and unfair competition, for trademark infringement under Michigan law |
| Count V | Unfair competition under M.C.L. § 429.42(a) |
| Count VI | Michigan Consumer Protection Act, M.C.L. § 445.903 |

SPS seeks money damages and injunctive relief.

On July 18, 2014, Superior Play filed the instant motion to dismiss. On August 7, 2014, SPS filed a response. Superior Play thereafter filed a reply.

On August 26, 2014, the Court held a status conference with the parties. At the conference, the Court permitted SPS to file an amended complaint within 30 days. The Court also advised Superior Play that it had ten days after the filing of the amended

complaint to advise whether it wanted to amend its motion to dismiss or go forward with the motion as it stood.

SPS filed a First Amended Complaint on September 23, 2014.  The amended complaint is substantially identical to the original complaint, although SPS dropped its claim for unfair competition under state law (Count V of the complaint).

Thereafter, Superior Play stated it wanted to go forward on the motion to dismiss without amendment.

### III.  Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  A complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007).  "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 679 (internal quotation marks and citation omitted).

Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit

the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Id. (internal quotation marks and citation omitted).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 678 (internal quotation marks and citation omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies may be appended to a motion to dismiss.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007).

## IV.  Analysis

For all the discussion of laches and the various statutes of limitations, Superior Play's motion is premised on the following two paragraphs in the complaint (which also appear verbatim in the amended complaint)

13. Upon information and belief, Defendant registered the domain name www.superiorplaymi.com on or about April 3, 2006 . . . .

14. Upon information and belief, since or about April 3, 2006, Defendant has promoted its playground equipment and sale and services via its website

> located at www.superiorplaymi.com and via its twitter account, @superiorplaymi.

Based on these allegations, Superior Play contends that SPS has "admitted" knowledge of its alleged infringing activities in 2006.  Because SPS did not file suit until eight years later in 2014, Superior Play say that all of SPS' claims are barred by laches.  Superior Play also says that Count III, asserting a claim of federal cyberpiracy, is barred by the applicable four year statute of limitation and Count VI, asserting a claim under the Michigan Consumer Protection Act, is barred by the six year statute of limitations.

Superior Play's argument, put simply, proves too much.  The statements in paragraphs 13 and 14 were made "on information and belief" and cannot be definitely or even plausibly read to mean that SPS concedes knowledge of the alleged infringing activity on April 3, 2006.  SPS has not alleged that its claims "accrued" on April 3, 2006, or that SPS knew that Superior Play commenced infringing SPS' trademark on that date.  Rather, SPS simply alleges that Superior Play registered its domain name and began promoting its business on April 3, 2006.

Moreover, Superior Play ignores another key paragraph in the complaint which sets forth detailed factual allegations as to when SPS says it first became aware of Superior Play's activities:

> 17.   Between 2012 and the present, numerous individuals contacted SPS to obtain playground equipment and services, believing that they were contacting Defendant.  In view of the actual confusion caused by Defendant's use of confusingly similar trademarks, trade name, and domain name, on February 20, 2014, SPS served Defendant with a cease and desist letter . . . . A series of letters between the Parties' counsel ensued and, despite SPS's assertions that SPS is a priority trademark user in Michigan and that Defendant was causing actual confusion in the market place by using a confusingly similar trademark, Defendant refused to discontinue use of its trademark, trade name, and domain name.

5

Paragraph 17 in the amended complaint contains more detail:

> 17.  SPS first became aware of Defendant on or about November 23, 2012, when an individual telephoned SPS, mistakenly believing that they were telephoning Defendant.  Since that time, numerous other individuals have contacted SPS to obtain playground equipment and services, believing that they were contacting Defendant.  In view of the actual confusion caused by Defendant's use of confusingly similar trademarks, trade name, and domain name, on February 20, 2014, SPS served Defendant with a cease and desist letter . . . . A series of letters between the Parties' counsel ensued and, despite SPS's assertions that SPS is a priority trademark user in Michigan and that Defendant was causing actual confusion in the market place by using a confusingly similar trademark, Defendant refused to discontinue use of its trademark, trade name, and domain name.

Under either paragraph, SPS alleges that it first learned of Superior Play's activities in 2012.  After SPS obtained what it believed to be sufficient evidence of actual confusion, SPS demanded that Superior Play change its name.  When Superior Play refused, SPS commenced this case.  These are plausible assertions which the Court must accept it as true and construe in "the light most favorable to plaintiff."  Having filed this case two years later, its claims are not barred by laches or by any applicable statute of limitations.

Superior Play's argument simply ignores paragraph 17 and makes the far reaching assumption that because SPS is an established company whose branding and sales efforts reached into Michigan it somehow acquired immediate knowledge of Superior Play's trademark infringement when it first occurred, presumably in 2006.  However, Superior Play does not offer any factual basis as to why this rather strained chain of inference is more plausible than SPS's assertion in the complaint that it first acquired first knowledge in 2012.  SPS has not plead that Michigan is a major sales territory of the SPS, that SPS or its employees have a physical presence in Michigan, or

that Superior Play registered its mark with the state. In short, the amended complaint does not present a basis for inferring that SPS had actual or constructive knowledge of Superior Play's activities before 2012. Whether SPS should have known that Superior Play was infringing its trademark before 2012, which SPS denies, is a factual question to be resolved after discovery. It is not a reason to dismiss the case.

To the extent Superior Play contends that a two year delay in filing suit constitutes laches, this argument does not carry the day. Measurement of time in a "limitation of action" analysis, whether with respect to laches or statute of limitations, must begin with an examination of when the "plaintiff knew or should have known that [the] infringement had ripened into a provable claim." Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc., 270 F.3d 298, 321 (6th Cir. 2001). On a motion to dismiss, a discovery rule analysis is conducted on the basis that facts alleged in the complaint are "accepted as true" and are construed "in the light most favorable to the plaintiff." Nahabedian v. One West Bank, FSB, 556 F. App'x 389, 390 (6th Cir. 2014).

Here, assuming SPS's allegation as true, a two-year delay in filing suit is not unreasonable so as to constitute laches. Because the case was filed prior to expiration of applicable statutes of statute of limitations, "there is a strong presumption that plaintiff s delay in bringing the suit for monetary relief is reasonable. Only rarely should laches bar a case before the analogous statute has run." Tandy Corp. v. Malone & Hyde, Inc., 769 F.2d 362, 365-66 (6th Cir. 1985). Superior Play has not put forth any reason for applying laches in the case which was filed before expiration of the applicable statute of limitations. The Court recognizes that the timing of filing a case may be governed by a variety of business-related reasons. A two-year wait to determine the nature of Superior

Play's business operations, the degree of business interference, and the efficacy of filing suit, is reasonable.

Finally, to the extent Superior Play contends that it has been prejudiced by any delay, this argument lacks merit. In support of its prejudice argument, Superior Play cites to SPS's substantial investment in "time, effort, and money" in developing its brand and characterizes this as "weighty economic prejudice." However, Superior Play does not explain how this conduct by SPS has prejudiced it.

## IV.  Conclusion

For the reasons stated above, Superior Play's motion to dismiss is DENIED.

The Case Manager shall schedule a status conference with the parties to chart the future course of the case.

SO ORDERED.


       S/Avern Cohn  
       AVERN COHN  
       UNITED STATES DISTRICT JUDGE

Dated:  October 31, 2014
       Detroit, MI

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 31, 2014, by electronic and/or ordinary mail.

       S/Sakne Chami  
       Case Manager, (313) 234-5160